279 So.2d 854 (1973)
William J. DORMAN, Petitioner,
v.
STATE of Florida, Respondent.
No. 42156.
Supreme Court of Florida.
June 6, 1973.
Rehearing Denied July 30, 1973.
Virgil Q. Mayo, Public Defender, for petitioner.
Robert L. Shevin, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., for respondent.
PER CURIAM.
This original proceeding in habeas corpus was referred to Circuit Judge Ernest E. Mason of the First Judicial Circuit of Florida as Commissioner to conduct an evidentiary hearing in the salient issues in the proceedings. See Dorman v. State, 263 So.2d 207 (Fla. 1972).
The Commissioner has filed his report of the evidentiary hearing and has answered the first question raised by this Court affirmatively, and the second question negatively. Those questions were: (1) Whether Petitioner's plea of guilty was voluntary and (2) whether the trial court should have inquired into the question of Petitioner's sanity, as provided in F.S., Chapter 917, F.S.A.
The Commissioner's report indicates that the Petitioner was charged with five counts *855 of crime against nature and three counts of lewd, lascivious and indecent assault. On November 1, 1963 the Petitioner plead not guilty to all eight charges. At Petitioner's request the trial judge ordered a psychiatric examination of Petitioner at his own expense. Two experts conducted the examination 
Morris L. Eaddy, Ph.D., a certified clinical psychologist, and
William M.C. Wilhoit, M.D., a psychiatrist and neurologist  and their reports were submitted to the judge.
On February 10, 1964 all charges except three counts of crime against nature were placed upon the "inactive docket." Petitioner then plead guilty to the remaining counts and was sentenced to three sentences of ten years, to run consecutively. The Commissioner found that Petitioner's plea was not made because of a promise that if he were to plead guilty he would be sent to a state mental institution for hospitalization and not to prison.
In response to the second question posed by this Court, the Commissioner found that the trial judge had not abused his discretion in failing to order a hearing as provided by F.S., Chapter 917, F.S.A. His reasons for holding Sections 917.01 and 917.02 inapplicable are reflected in the following passage:
"Sections 917.01 and 917.02 deal with the question of the defendant's sanity at the time of the alleged commission of the crime and with his mental capacity to stand trial on the charge filed against him. It is evident that these provisions are not applicable to the facts in this case for neither the defendant nor his counsel ever claimed that he was insane so as to be incapable of standing trial or that he was insane within the meaning of the McNaughton Rule at the time of the alleged commission of the crimes charged against him, and to three of which he plead guilty and was sentenced."
As to the applicability of F.S., Section 917.12, F.S.A., the Commissioner found that the trial court judge did not abuse his discretion in failing to adjourn the proceedings or suspend the sentence for the following reasons:
"(1) that the report of the experts reflected only that the petitioner was a sexual deviate, not a criminal sexual psychopath, and (2) because his prognosis was so poor that Dr. Wilhoit felt that his chance for release to society was remote." Dorman v. State, supra, at 209.
We are not satisfied with the Commissioner's findings and recommendations in one important particular: It is our view of the matter, derived from a careful reading of the evidence, that there was an abuse of discretion on the part of the trial judge under the circumstances of this case in not affording the Petitioner the benefit of a mental examination pursuant to the provisions of F.S., Chapter 917, F.S.A. (1963). We agree with the Public Defender appointed by the Commissioner to represent the Petitioner at the evidentiary hearing that a mental examination of Petitioner pursuant to Chapter 917 was a condition precedent to a determination of whether the Petitioner should have been criminally tried or his plea of guilty accepted by the trial judge.
F.S., Section 917.12(1), F.S.A., defines criminal sexual psychopaths as:
"all persons suffering from a mental disorder and not insane or feeble-minded which mental disorder has existed for a period of not less than four months immediately prior to the appointment of the psychiatrists provided for in subsection (2)(c) coupled with criminal propensities to the commission of sex offenses and who may be considered dangerous to others. ..." (Emphasis supplied.)
Subsection (2) provides:
"When a person has been charged by information with any crime ... the *856 trial judge on his own motion or on motion of the prosecuting attorney of said court or on application by affidavit by or on behalf of the defendant, if, it appears to the satisfaction of the court that there is probable cause for believing such person is a sexual psychopath within the meaning of this act, may adjourn the proceeding or suspend the sentence, as the case may be, and may certify the person for hearing the examination by the circuit court of the circuit in which the trial court is situate to determine whether the person is a criminal sexual psychopath within the meaning of this act." (Emphasis supplied.)
Returning to the reasons for the Commissioner's finding, we find that the first reason  that the Petitioner is only a sexual deviate and not a sexual psychopath  is incorrect. That the placing of such a label as "sexual deviate" on Petitioner is not conclusive in a determination of whether the Petitioner is a sexual psychopath is made clear by our holding in Hobbs v. Cochran, 143 So.2d 481 (Fla. 1962). In Hobbs, the defendant was charged with assault with intent to rape, sodomy per os, false imprisonment, and kidnapping. His plea of "guilty by reason of insanity" was taken as a plea of guilty and he was sentenced to 60 years in the state prison. The prison hospital declared him insane. Upon petition for writ of habeas corpus this Court appointed a commissioner to take testimony upon the question of whether the defendant should have been given a hearing under F.S., Section 917.12, F.S.A. Upon submission of the Commissioner's findings, we agreed with the Commissioner that there was plain notice to the trial judge that the sanity or insanity of the Petitioner was an issue and that there existed adequate probable cause that he was a sexual psychopath. Of significance to this cause is our statement in Hobbs that
"there seems to be no doubt that the petitioner was a sex deviate. ... But from the plea itself and the statements of the petitioner it is obvious that he was abnormal.
* * * * * *
"... That he had a pronounced tendency toward sex crimes ... and that he was dangerous to others was demonstrated by what he did ... there was a plain notice to the trial judge that the sanity or insanity of the Petitioner was an issue and we concur in the commissioner's view there should have been resort to the procedure outlined in Sec. 909.17 and Chapter 917, Florida Statutes 1959, F.S.A., or Sec. 917.12, supra, or all of them."
Supra, at 483.
The fact that the Petitioner has been labeled a sexual deviate does not, therefore, mean that he is not also a sexual psychopath.
Upon review of the reports of the two doctors who examined the Petitioner, it is abundantly clear that the Petitioner meets the definition of sexual psychopath. First, it was the conclusion of both doctors that the Petitioner was schizophrenic, suffered from sexual deviation and was of dullnormal intellect. Thus it is clear that the Petitioner suffered from a mental disorder. Secondly, it is clear that this condition existed more than four months immediately prior to the appointment of the examining psychiatrist. Both doctors reported that the Petitioner had begun his sexually deviate behavior before he reached the age of 10. Thirdly, the doctors reported that the Petitioner has engaged in deviate sexual activities with both children and animals since early childhood, thus showing his propensities to commit sex offenses. Finally, in recommending that the Petitioner be committed to an institution, Dr. Wilhoit, the psychiatrist, based his recommendation partly upon the fact that Petitioner is dangerous to children. This conclusion is supported by the acts which the Petitioner is charged with having committed. It is therefore apparent that the Petitioner *857 meets the last requirement of F.S., Section 917.12, F.S.A., that he be considered dangerous to others.
All of this information was before the trial judge prior to Petitioner's plea of guilty and yet he failed to find the existence of probable cause that the Petitioner was a sexual psychopath. It appears that in failing to do so the trial judge based his decision upon the fact that neither of the doctors had labeled the Petitioner as a sexual psychopath (thus raising the question whether the trial judge considered the definition of sexual psychopath) and his feeling that society would be better protected if Petitioner spent thirty years in a state prison. In response to a question as to whether the trial judge considered holding a hearing under Section 917.12, the trial judge responded:
"No, sir. I didn't consider that Mr. Dorman came within the purview of that statute. I considered him to be a sexual deviate, that's true. And, if you will refer to the report of the psychiatrist, no where did they identify him, as I remember, as being a sexual psychopath. They referred to him as being a sexual deviate, and I considered him to be such. I considered him to be a man who was a danger to society, and a criminal, and I thought that he best spend his years in a state prison rather than take up some bed in a hospital where somebody else could more profitably use it. You'll notice the doctor said in his report that you referred to, `I think his prognosis is poor and that his chances for release to society are remote.' I couldn't see any point, therefore, in sending an able-bodied man to a state hospital when he could else be taken care of so far as custodial matters were concerned in a state institution." (Emphasis supplied.)
Whether or not probable cause that a defendant is a criminal sexual psychopath exists depends not upon the extraneous fear of the trial judge that the defendant is such a menace to society that he should be locked away in a state prison where he will receive no rehabilitative assistance in attempting to overcome his mental disorders, but upon the elements of the definition of criminal sexual psychopath provided by the Legislature in F.S., Section 917.12(1), F.S.A.
Turning to the Commissioner's findings concerning F.S., Section 917.02, F.S.A., it is apparent upon reading this provision that it is not important to a determination of the question before this Court. Section 917.02 deals only with the discretion of the trial court to appoint expert witnesses to determine whether a defendant was insane at the time of the commission of the alleged offense. We are concerned with whether this Petitioner should have been provided a criminal sexual psychopath hearing under Section 917.12, F.S. 1963, F.S.A., prior to a criminal prosecution on the issue of his sanity in a sex offense case and not the appointment of expert witnesses to examine him.
Furthermore, F.S., Section 917.01, F.S.A., differing from F.S., Section 917.02, F.S.A., provides in part:
"If before or during trial the court, of its own motion ... has reasonable ground to believe that the defendant is insane, the court shall immediately fix a time for a hearing to determine the defendant's mental condition."
Based upon the opinion of Dr. Wilhoit, upon which the trial judge relied so heavily, that the Petitioner's prognosis was poor and that his chances for release to society were remote, it is our opinion that the trial judge should have concluded that reasonable ground existed to believe the Petitioner may have been insane or may have been a sexual psychopath. He therefore should have ordered a hearing to determine whether or not the Petitioner should be tried or his plea of guilty accepted.
*858 The fact the Petitioner plead guilty and had the benefit of counsel at the time did not amount to a waiver nor absolve the trial judge under the related circumstances from the duty of ordering a mental examination under Section 917.12. There was enough information before the trial judge, including the reports of the defendant's two doctors to warrant such mental examination. The result of such an examination obviously should have been part and parcel of the judge's determination of whether to try the case or accept the plea of guilty and if so the nature and extent of the punishment to be meted. Instead of ordering a mental examination of Petitioner as an essential element in making his evaluation of Petitioner's total situation, the trial judge appeared imbued with the idea that a long prison term rather than hospitalization to correct, if possible, defendant's mental problem was the only alternative. This conclusion in view of the related circumstances appears contrary to Section 917.12 and its intent as we construed it in the Hobbs case.
We conclude that based upon our finding that probable cause existed as to whether the Petitioner was in fact a sexual psychopath as defined by F.S., Section 917.12(1), F.S.A., or in the alternative that reasonable ground existed to believe that the Petitioner was insane at the time of his trial, the trial court judge abused his discretion in failing to conduct a hearing on the question of Petitioner's sanity.
Accordingly, we quash the decision of the trial court and remand the cause with directions to conduct a requisite hearing into the Petitioner's sanity.
It is so ordered.
CARLTON, C.J., and ERVIN, McCAIN and DEKLE, JJ., concur.
ROBERTS, ADKINS and BOYD, JJ., dissent.