365 So.2d 149 (1978)
John Wallace LeDUC, Appellant,
v.
STATE of Florida, Appellee.
No. 47953.
Supreme Court of Florida.
November 22, 1978.
Brooks Taylor, Crestview, for appellant.
Robert L. Shevin, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This is a capital case brought to us to review two sentences of death imposed by the Circuit Court of Okaloosa County, Florida. John Wallace LeDuc pleaded guilty to the rape and murder of a nine-year-old girl. A jury, convened to recommend sentence to *150 the trial court on the two criminal charges, unanimously recommended a death penalty as to both. The trial judge independently sentenced LeDuc to death on both charges, and the convictions and sentences were properly brought to us for review.[1]
After LeDuc's appeal was filed in this Court, we relinquished jurisdiction to the trial court to prepare written findings as to the aggravating and mitigating factors which bore on the court's decision to impose the death penalty.[2] The trial judge declined to provide more express findings than appeared in his original pronouncement at the time of sentencing, except to specifically note that none of the mitigating factors enumerated by the Florida Statutes "or otherwise" were present. The original sentence order was silent with respect to mitigating circumstances.
LeDuc's counsel offers only one alleged infirmity with respect to LeDuc's convictions and sentences  the failure of the trial judge to certify LeDuc as a mentally disordered sex offender under Chapter 917, Florida Statutes (1975). He suggests that the trial judge abused his discretion in failing to certify LeDuc, relying on our decision in Dorman v. State, 279 So.2d 854 (Fla. 1973).
During oral argument before this Court, we ascertained that the sentencing jury and the trial court had neither seen nor considered a series of psychiatric reports prepared in 1961 by the Devereux School of California where LeDuc had been confined and treated for psychiatric disturbances as a youth. On motion of LeDuc's counsel after argument, we again relinquished jurisdiction to the trial court for consideration of this report in connection with LeDuc's motion for certification. At a hearing conducted for that purpose the trial judge found nothing in the report to change his original denial of certification, and he again returned the case to us for review.
We reviewed in detail the test of all psychiatric reports in the record, including two presented by court-appointed psychiatrists prior to LeDuc's pleas, and we find no basis to conclude that the trial judge abused his discretion in failing to certify LeDuc under the statute. See Huckaby v. State, 343 So.2d 29 (Fla. 1977).
Even though LeDuc's counsel has not challenged the legal sufficiency of LeDuc's convictions and sentences on any basis, we are obligated by law and rule of this Court to ascertain whether they are proper.[3] As regards the convictions, our scope of review is obviously limited by the fact that LeDuc pleaded guilty to both charges against him, on the advice of counsel, in exchange for a recommendation of mercy from the prosecutor. The pleas were intelligently made, and the trial court's inquiry as to their voluntariness and the underlying factual foundations was thorough. We are satisfied that both convictions are legally proper and must stand.
As regards the death sentences which were imposed, our review is channeled by the statute, which requires the advisory jury and the trial judge to evaluate and weigh specific factors enumerated as mitigating and aggravating circumstances. Here the advisory jury heard a summary of the evidence of the crimes, plus an argument by defense counsel to the general effect that LeDuc was mentally disturbed. The prosecutor, in his closing remarks, briefly listed the aggravating circumstances shown by the evidence he had placed in the record and pointed out that no evidence of mitigation had been introduced. Nonetheless, in accordance with his bargain, the prosecutor recommended a life sentence. In final closing argument, defense counsel repeated his argument that no one could have committed so terrible a crime unless he was mentally disturbed.
The jury unanimously recommended the death penalty on both charges. The trial judge did not expressly find any mitigating circumstance to be present or absent, and he essentially relied on the atrocity of the *151 crime as an aggravating circumstance sufficient to warrant imposition of the death penalty.[4]
The primary standard for our review of death sentences is that the recommended sentence of a jury should not be disturbed if all relevant data was considered, unless there appear strong reasons to believe that reasonable persons could not agree with the recommendation.[5] On the record placed before the jury in this case, a recommended sentence of death was certainly reasonable.[6] Indeed, the only data on which a life recommendation could have been made would have had to be grounded on the nonevidentiary recommendation of the prosecutor and the emotional plea of defense counsel.
The trial judge was cognizant at the time of sentencing of the reports of two psychiatrists who interviewed LeDuc to determine his competence to stand trial, although the jury was not apprised of their existence. As earlier noted these reports were rendered prior to acceptance by the court of LeDuc's guilty pleas. One of the psychiatric reports states the impression that LeDuc "is a very schizoid individual," but finds "no classical indicia of psychosis." Each report concluded that appellant was sane at the time of the offense and had sufficient mental capacity to assist counsel with his defense. In each examination LeDuc admitted to previous episodes of criminal conduct. This evidence before the trial judge was insufficient to compel a finding of the existence of the statutory mitigating circumstances related to mental disturbance, i.e., "The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance" [Section 921.141(6)(b)], or "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired" [Section 921.141(6)(f)].
While admittedly not available to the trial judge at the time of sentencing, additional psychiatric information which might bear upon the enumerated mitigating circumstances was considered by the judge at the time we relinquished jurisdiction for consideration of the report of the Devereux Foundation as bearing on the original Motion to Certify as a mentally disordered sex offender. At the hearing held to consider this *152 additional information the court reviewed not only the Devereux Foundation report but also the reports of the court-appointed psychiatrists as well as certain other evidence presented by the State relative to LeDuc's military service record. It is important to note that at the conclusion of the hearing, the trial judge not only reaffirmed his original ruling upon the motion to certify but he also reaffirmed the sentence of death.[7]
Although this case has had an arduous course through the courts and the articulation of the trial judge's sentencing considerations does not appear with the clarity we should like to see when Section 921.141 is being applied, nevertheless, a review of the entire proceedings convinces us that the trial judge reasonably found that the capital felonies were especially heinous, atrocious and cruel [Section 921.141(5)(h)] and that he could just as reasonably conclude that no mitigating circumstances were established. The case of State v. Dixon, 283 So.2d 1 (Fla. 1978), established that when one or more aggravating circumstances is found, death is presumed to be the proper sentence in the absence of any mitigating circumstances. Accordingly, the judgments of guilt and the sentences of death entered below are affirmed.
It is so ordered.
ADKINS, BOYD, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.
ENGLAND, C.J., and OVERTON, J., concur with that part of majority opinion which affirms the judgments of guilt, but dissent from that part which affirms sentences of death.
NOTES
[1] § 921.141(4), Fla. Stat. (1975).
[2] § 921.141(3), Fla. Stat. (1975).
[3] § 921.141(4), Fla. Stat. (1975); Fla.R.App.P. 9.140(f).
[4] The sentencing order of the trial judge read as follows:

"You, John Wallace LeDuc, having plead [sic] guilty to the crime of First Degree Murder the Court does hereby adjudge you to be guilty and the Court having heretofore impaneled a jury to return its advisory opinion of either [sic] your sentence should be the death penalty or life imprisonment for your offense of First Degree Murder and the Jury returned the advisory opinion recommending the death penalty for your crime of First Degree Murder the Court now ask [sic] you and your counsel, Honorable Brooks Taylor, what you have to say before sentence is passed and why sentence should not be pronounced upon John Wallace LeDuc.
"The Court having heard from you and your counsel anything you had to say it is now the finding of this Court as required by law that the facts in your case of First Degree Murder were so aggravating, heinous, atrocious, cruel and of such a sadistic nature performed on a young, minor girl that it is therefore the judgment and sentence of this Court and sentence of the law that you, John Wallace LeDuc, for your said offense be remanded to the custody of the Sheriff of Okaloosa County, Florida, who for your safekeeping is ordered to deliver you to the State Prison for confinement; whereupon, after the issuance of a death warrant by the Governor of the State of Florida, the Superintendent of the State Prison shall, in accordance with law, cause to pass through your body a current of electricity of such intensity to cause your immediate death, and shall continue the application thereof until you are dead; and may God have mercy on your soul.
"This is to advise you that according to law that there will be an automatic review of your conviction and sentence of death by the Supreme Court within sixty days after certification by the sentencing court of the entire record unless there is extended an additional period not to exceed thirty days by the Supreme Court with good cause shown."
The sentencing order of the trial judge with respect to the offense of involuntary sexual battery read essentially the same.
[5] Tedder v. State, 322 So.2d 908 (Fla. 1975).
[6] The record is replete with evidence suggesting the utter brucality and depravity of the murder, thus amply supporting the trial judge's finding of an "especially heinous (or) atrocious" crime. § 921.141(5)(h), Fla. Stat. (1975).
[7] The Order of the trial judge after the certification hearing states as follows:

"JUDGE: At this time in considering all these reports, the one the Supreme Court said for me to see, the report from Dr. Phillips and Dr. Sherman, the letters that the state attorney has and all that have been put into evidence without any objection, the Court sees no way to rule at all on this case except that from the Court's determination John Wallace LeDuc was sane at the time that the Court said he was able to stand trial, sane at the time the two psychiatrists saw him, and according to their opinion was sane at the time that the offense which was committed, was committed. And for that reason the Court's going to find this matter should be as it sees, affirmed in the action this Court took originally in it; and feels that there is nothing here that would cause this Court to want to have a new trial or feel that a new trial would be of any value in this case, because I feel that everything that went before the jury was proper, that these reports that were submitted later, coupled with the other evidence that was put to the Court before and when we had the inquisition into his sanity, and the psychiatrists' reports, would all show that this young man was sane and he was not a sexual psychopath. And it is strictly in the province of the jury because he was pled guilty, as I recall, to the offense and it was a matter of a jury being sworn to determine whether he would get life imprisonment or the electric chair, and it was a unanimous verdict of the jury that he receive the death penalty. And the Court took that in consideration and took in consideration the way the offense was committed and has already entered into the record originally the day that we had the sentencing in writing it's [sic] reasoning for sentencing this young man to death, the death penalty.
"And the Court did not take it lightly, because this is the first case that this judge has had to sentence a person to the electric chair and the death penalty. And I put my reasoning in then and I do not see any reason for having to enumerate them but it was the brutality and the age of the child and the way the rape-murder was carried out, which the Court feels led the jury to recommend by unanimous verdect [sic] that the defendant have the death penalty, and which caused this Court to pass on to the defendant the death penalty in this cause, because of the way that the crime was committed and all the circumstances involved therein, which the Court has heretofore entered the special reasoning for the death penalty. And feels that these reports, coupled with all the other evidence put in here, would substantiate the Court's returning this to the Supreme Court and feeling that there is not enough evidence after considering all these others, to set aside anything that the Court has heretofore determined. And feel it should be remanded to the Supreme Court for their further consideration. And actually the Court feels that the action of the lower court should be affirmed." (Emphasis supplied)
Record of Certification Hearing, pp. 13-14.