**James Dupree HENRY, Petitioner-Appellee Cross-Appellant,**

v.

**Louie L. WAINWRIGHT, Secretary, Department of Corrections, Respondent-Appellant Cross-Appellee.**

No. 80–5184.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Nov. 12, 1981.

Rehearing and Rehearing En Banc
Denied Jan. 26, 1982.

Wallace E. Allbritton, Charles A. Stampelos, Asst. Attys. Gen., Tallahassee, Fla., for respondent-appellant cross-appellee.

Craig S. Barnard, Chief Asst. Public Defender, 15th Judicial Circuit, West Palm Beach, Fla., for petitioner-appellee cross-appellant.

Before HILL and HENDERSON, Circuit Judges, and SMITH **, Judge.

JAMES C. HILL, Circuit Judge:

This appeal requires that we decide whether it is error as a matter of constitutional law to allow a jury in a capital case to consider nonstatutory aggravating factors in deciding whether the death penalty should be imposed. We hold that it is and affirm the district court's grant of a writ of habeas corpus.

Appellee James Dupree Henry was convicted of first degree murder on June 26, 1974 in the Circuit Court for Orange County, Florida. At the sentencing hearing, the state called as a witness the arresting officer who, over defense objection, testified that Henry had taken the officer's gun and wounded him in an attempt to avoid arrest. Henry's counsel objected to this testimony on the ground that it constituted a nonstatutory aggravating factor,[1] and the objection

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

** Judge U.S. Court of Claims, sitting by designation.

1. The Florida capital sentencing statute provides that

    [a]ggravating circumstances *shall be limited to the following*:

was overruled. At the close of the hearing, the trial judge instructed the jury as follows:

> [Y]ou will render an advisory sentence to the court based upon the following matters:
>
> Whether sufficient aggravating circumstances exist, or sufficient mitigating circumstances exist for you to recommend the Death Penalty or Life Imprisonment.
>
> In considering aggravating circumstances, *you shall consider all factors which are aggravating including, but not limited to, the following*: ....

Record, Vol. VI at 1035 (emphasis added). The jury recommended the death penalty, and the trial judge filed findings in support of this penalty and entered sentence accordingly.

After exhausting his state court remedies,[2] Henry applied for a writ of habeas corpus in the United States District Court for the Middle District of Florida, Orlando Division. On the basis of the erroneous jury instruction which allowed the sentencing jury to consider nonstatutory aggravating factors, the district court granted the writ if the state trial court failed to provide

a second sentencing hearing within ninety days of the court's order.

Louie L. Wainwright, Secretary of the Department of Corrections for the State of Florida, appeals the granting of the writ. Two issues are presented for decision: (1) whether the failure of Henry's counsel to object to the jury instructions precludes federal habeas review of the alleged error in these instructions; and (2) if not, whether the state trial court committed an error of constitutional dimension in admitting evidence of and permitting jury consideration of nonstatutory aggravating circumstances.[3]

I.

Under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), failure to comply with a state procedural rule, such as a contemporaneous objection rule, bars federal habeas review of alleged federal constitutional error in admission of the evidence absent a showing of cause for noncompliance and actual prejudice. Appellant Wainwright points out that Henry's counsel failed to object to the trial judge's instructions to the jury as required by Flor-

---

(a) The capital felony was committed by a person under sentence of imprisonment.

(b) The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person.

(c) The defendant knowingly created a great risk of death to many persons.

(d) The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit any robbery, rape, arson, burglary, kidnapping, or aircraft piracy or the unlawful throwing, placing, or discharging of a destructive device or bomb.

(e) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.

(f) The capital felony was committed for pecuniary gain.

(g) The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.

(h) The capital felony was especially heinous, atrocious, or cruel.

(i) The capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.

Fla.Stat.Ann. § 921.141(5) (West Cum.Supp. 1981) (emphasis added). The Florida Supreme Court has construed this section as providing an exclusive list of aggravating factors. *Purdy v. State*, 343 So.2d 4, 6 (Fla.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 153, 54 L.Ed.2d 114 (1977). We note, however, that this authoritative construction from the state's highest court was not available to the trial judge at the time of Henry's trial.

2. Henry's conviction and sentence were affirmed on appeal to the Florida Supreme Court. *Henry v. State*, 328 So.2d 430 (Fla.), *cert. denied*, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976). That court also affirmed the state trial court's denial of a motion to vacate the judgment and death sentence. *Henry v. State*, 377 So.2d 692 (Fla.1979).

3. Because we dispose of these issues in Henry's favor, we need not address the issues raised by Henry's cross-appeal.

ida's contemporaneous objection rule [4] and thereby had waived any claim of error in the instructions. This circuit, however, has held that procedural defaults may be excused, notwithstanding *Wainwright,* if the state's own rules excuse such default. *McKinney v. Estelle,* 657 F.2d 740, 742 n.1 (5th Cir. 1981); *Clark v. Blackburn,* 632 F.2d 531, 533 n.1 (5th Cir. 1980).

The Florida Supreme Court has excused such procedural default in similar circumstances. In *Brown v. State,* 206 So.2d 377 (Fla.1968), that court held that the failure by accused's counsel to submit as required a request for particular jury instructions did not preclude appellate review of alleged error in the instructions given where the trial judge had already made clear that he would not charge the jury as counsel desired. *Id.* at 384. The rationale in *Brown* that "[a] lawyer is not required to pursue a completely useless course when the judge has announced in advance that it will be fruitless," *id.* (citing *Birge v. State,* 92 So.2d 819 (Fla.1957)), is equally applicable here. At Henry's trial, his counsel objected to the testimony of the arresting officer on the grounds that it was evidence of a nonstatutory aggravating factor. Record, Vol. VI at 1012–13. At that time, the trial judge overruled the objection and made clear his intention to allow such evidence to go to the jury. *Id.* In light of this ruling, any further objection to the jury instructions permitting consideration of nonstatutory aggravating factors would have been futile. As the district court noted, the objection to the arresting officer's testimony was sufficient to put the trial judge on notice that the defense would object to any instructions allowing consideration of this evidence. For these reasons, we hold that the failure of Henry's counsel to object to the jury instructions does not preclude federal habeas review of the alleged error in the instructions.

4. Florida Rule of Criminal Procedure 3.390(d) provides:

(d) No party may assign as error grounds of appeal the giving or the failure to give an

## II.

We consider now whether the admission of evidence of nonstatutory aggravating factors and the jury instructions permitting consideration of any aggravating circumstances violate the eighth and fourteenth amendments. Appellant Wainwright argues that this court is bound by Florida Supreme Court cases interpreting the Florida capital sentencing statute in which that court has held that consideration of nonstatutory aggravating circumstances is harmless error where there are other statutory aggravating factors and no mitigating factors. *See Brown v. State,* 381 So.2d 690 (Fla.1980); *Douglas v. State,* 373 So.2d 895 (Fla.1979); *Elledge v. State,* 346 So.2d 998 (Fla.1977). Henry, on the other hand, argues that these cases regarding harmless and reversible error are not relevant to the constitutional issue before us— namely, whether a jury charge permitting consideration of nonstatutory aggravating factors violates the eighth and fourteenth amendments because it fails adequately to channel the jury's discretion in determining whether to impose the death penalty. Agreeing with Henry, we conclude that such a jury instruction contravenes the constitutional directive in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and its progeny that jury discretion in capital sentencing be sufficiently guided so as to avoid the arbitrary and selective imposition of the death penalty.

As identified by the Supreme Court in *Furman,* the evil that must be avoided—the feature which rendered pre-*Furman* capital sentencing procedures the instrument of cruel and unusual punishment—is the irregular or selective application of the death penalty. *Id.* at 242, 92 S.Ct. at 2728 (Douglas, J., concurring). Consequently the eighth and fourteenth amendments require states to adopt and follow procedures that minimize the risk of arbitrary and discriminatory infliction of the death penalty and that provide a "meaningful basis for distin-

instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection . . . .

guishing the few cases in which it is imposed from the many cases in which it is not." *Id.* at 313, 92 S.Ct. at 2764 (White, J., concurring).[5] We believe that permitting the jury to consider whatever evidence of nonstatutory aggravating circumstances the prosecution might desire to present or the jurors might discern in the testimony opens too wide a door for the influence of arbitrary factors on the sentencing determination. By sanctioning consideration of statutory aggravating factors *plus anything else the jury determines to be aggravating,* such an instruction broadens jury discretion rather than channels it and obscures any meaningful basis for distinguishing cases in which the death penalty is imposed from those in which it is not.

The Florida Supreme Court acknowledges that the introduction and consideration of nonstatutory aggravating factors is, under its statute, error. *See Brown v. State,* 381 So.2d 690, 696 (Fla.1980); *Elledge v. State,* 346 So.2d 998, 1002 (Fla.1977). Based on its interpretation of two footnotes in *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976),[6] however, it concludes that death sentences *partially* predicated on nonstatutory aggravating factors do not violate constitutional prohibitions. *Elledge v. State,* 346 So.2d 998, 1002–03 (Fla.1977). The Florida court reasons that the essential evil in the use of such factors is allowing

nonstatutory aggravating circumstances to override mitigating circumstances in the weighing process. *Id.* at 1003. If any substantial[7] mitigating factors are present, the introduction of nonstatutory aggravating factors is reversible error since a court is unable to determine whether the death sentence was the result of such improper weighing of the evidence. Where mitigating factors are absent, though, there is no danger that the unauthorized factor tipped the scale in favor of death.

With all due respect to the Florida Supreme Court, we believe that this careful analysis falls wide of the mark, for "our task is not restricted to an effort to divine what motives impelled [this] death penalt[y]. Rather, we deal with a system of law and of justice that leaves to the uncontrolled discretion of judges and juries the determination whether defendants committing these crimes shall die or be imprisoned." *Furman v. Georgia,* 408 U.S. 238, 253, 92 S.Ct. 2726, 2734, 33 L.Ed.2d 346 (Douglas, J. concurring). Guarding against the arbitrary and discriminatory imposition of the death penalty must not become simply a guessing game played by a reviewing court in which it tries to discern whether the improper nonstatutory aggravating factors exerted a decisive influence on the sentence determination.[8] The guarantee

5. "The high service rendered by the 'cruel and unusual' punishment clause of the Eighth Amendment is to require legislatures to write penal laws that are evenhanded, nonselective, and nonarbitrary, *and to require judges to see to it that general laws are not applied sparsely, selectively, and spottily to unpopular groups.*" 408 U.S. at 256, 92 S.Ct. at 2735 (Douglas, J., concurring) (emphasis added).

6. In footnote 8 the Court in *Proffitt* stated that "it is unclear whether the Florida court would uphold a death sentence based *entirely* on nonstatutory aggravating circumstances," 428 U.S. at 250 n.8, 96 S.Ct. at 2965–66 n.8 (emphasis added), and suggested that such a result seems unlikely. In response to an allegation "that Florida's sentencing system fails to channel the discretion of the jury or judge because it allows for consideration of nonstatutory aggravating factors," the Court further observed that the only Florida Supreme Court case to approve this practice upheld the death penalty only after recasting the trial court's six nonstatutory

aggravating circumstances into two statutory and two nonstatutory factors. *Id.* at 256 n.14, 96 S.Ct. at 2968 n.14.

We cannot agree with the Florida Supreme Court that these passages endorse the use of nonstatutory aggravating factors in the sentencing process as long as other statutory factors are present.

7. In *Brown v. State,* 381 So.2d 690 (Fla.1980), the Florida Supreme Court seems to have reduced its requirement in *Elledge* that there be absolutely *no* mitigating factors to a requirement that there be no *major* mitigating factors. *See id.* at 696.

8. Compare *Stephens v. Zant,* 631 F.2d 397 (5th Cir. 1980), *cert. granted,* —— U.S. ——, 102 S.Ct. 90, 70 L.Ed.2d 83 (1981), in which we vacated a death sentence imposed on the basis of a statutory aggravating circumstance later declared unconstitutional, even though there were two other statutory aggravating

against cruel and unusual punishment demands more.

In short, appellant's argument in this case seeks this court's approval of a practice that violates the spirit, if not the letter, of *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). In *Proffitt* the Supreme Court held Florida's death penalty statute constitutional on its face inasmuch as it appeared to provide specific and detailed guidance to the judge and jury at the sentencing stage. We are bound to disapprove of the trial court's ignoring the limitations imposed by the statute itself and increasing rather than decreasing the risk that the death penalty will be imposed in an arbitrary and capricious manner through the introduction of nonstatutory aggravating circumstances. The Supreme Court of Florida is, properly, the tribunal to rule on that state's statutory requirement.[9] Here, however, the limitations of the statute make the death penalty constitutional. Ignoring those limitations thus implicates the constitution.

Because the state trial court committed constitutional error in admitting evidence of and permitting jury consideration of nonstatutory aggravating circumstances, Henry's death sentence must be vacated.[10] For the foregoing reasons, the district court's judgment is

AFFIRMED.

factors, either of which by itself was legally sufficient to permit the jury to impose the death penalty. Because it was impossible to "determine with the degree of certainty required in capital cases that the [improper] evidence ..., together with the instruction, did not make a critical difference in the jury's decision to impose the death penalty," we held that the jury's discretion had not been sufficiently channeled to enable "rational review" of the sentencing process. *Id.* at 406.

Such a guessing game is the antithesis of the rational review of the jury's application of clear and objective standards contemplated by *Furman* and its progeny. *See Woodson v. North Carolina*, 428 U.S. 280, 303, 96 S.Ct. 2978, 2990, 49 L.Ed.2d 944 (1976) (opinion of Stewart, Powell and Stevens, JJ.). The introduction of extraneous factors not reduced to clear statutory guidelines defeats the goal of consistent application of objective factors.

9. We note as well that we intimate no view on the question whether the Florida legislature might constitutionally add to its capital sentencing statute assault on a peace officer during an attempted arrest as a statutory aggravating circumstance.

10. Appellant Wainwright has argued that the jury instruction, even if erroneous, was not an error of constitutional dimension and therefore also has addressed the question of whether an erroneous, though constitutional, jury charge requires reversal of a death sentence. Because we decide the first argument adversely to Wainwright, we need not address the latter argument.