James Dupree HENRY, Petitioner-Appellee, Cross-Appellant,

v.

Louie L. WAINWRIGHT, Secretary, Department of Corrections, Respondent-Appellant, Cross-Appellee.

No. 80–5184.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Dec. 13, 1983.

* Former Fifth Circuit Case, Section 9(1) of Public Law 96–452, October 14, 1980.

Wallace E. Allbritton, Charles A. Stampelos, Tallahassee, Fla., for respondent-appellant, cross-appellee.

Craig S. Barnard, Chief Asst. Public Defender, West Palm Beach, Fla., for petitioner-appellee, cross-appellant.

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before HILL, HENDERSON and SMITH **, Circuit Judges.

JAMES C. HILL, Circuit Judge:

In this case, we review the order of the district court granting appellee James Dupree Henry's petition for a writ of habeas corpus. This panel previously decided and affirmed this case sitting as the United States Court of Appeals for the Fifth Circuit (Unit B), *see Henry v. Wainwright,* 661 F.2d 56 (5th Cir.1981) (*Henry I*), and Wainwright appealed to the Supreme Court. The Supreme Court vacated and remanded the case for further consideration in view of *Engle v. Isaac,* 457 U.S. 1114, 102 S.Ct. 2922, 73 L.Ed.2d 1326 (1982), and, in *Henry*

** Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

*v. Wainwright,* 686 F.2d 311 (5th Cir.1982) (*Henry II*), we reinstated our previous judgment. Wainwright appealed again to the Supreme Court, which vacated and remanded the case again, this time for reconsideration in light of *Barclay v. Florida,* —— U.S. ——, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). Upon reconsideration, we have determined that the decision in *Barclay* demonstrates that our previous decision was in error. After considering the issues raised by Henry on cross appeal not passed on in our previous decisions, we conclude that the district court properly denied relief as to those issues. Therefore, we affirm the judgment of the district court denying the writ as to the additional issues and reverse the judgment of the district court granting relief on the *Barclay* issue.[1]

I

In *Henry I,* 661 F.2d at 56, we concluded that it is Constitutional error for the sentencing authority to consider nonstatutory aggravating factors in determining whether to impose the death penalty. In *Barclay,* the Supreme Court clearly held that the Constitution does not prohibit the sentencing judge from considering nonstatutory aggravating circumstances in all cases. 103 S.Ct. at 3427 (plurality opinion); 103 S.Ct. at 3437 (Stevens and Powell, JJ., concurring). In that case, the trial judge found valid statutory aggravating circumstances but no mitigating circumstances. The Supreme Court held it proper for the Florida Supreme Court to conclude in such a case that the reliance of the sentencing judge on the nonstatutory aggravating circumstance was harmless error. *Id.* 103 S.Ct. at 3428, 3433.

Henry contends that distinctions between the present case and *Barclay* require that we invalidate his death sentence. He first argues that in *Barclay* and in *Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the sentencing authority considered evidence properly before it but

erroneously concluded that the evidence supported a finding of a statutory aggravating circumstance. Henry contends that the trial judge in this case relied on inadmissible evidence. Henry cites *Ford v. Strickland,* 696 F.2d 804, 814 (11th Cir.1983) (en banc), *Antone v. Strickland,* 706 F.2d 1534 (11th Cir.1983), *Shriner v. Wainwright,* 715 F.2d 1452 (11th Cir.1983), and *Brooks v. Francis,* 716 F.2d 780 (11th Cir.1983) to support his contentions.

These cases do not support the result advocated by Henry. *Ford* involved "consideration of neither unconstitutional or nonstatutory aggravating evidence," 696 F.3d at 814, and *Antone* involved a similar situation, 706 F.2d at 1539. In *Brooks,* the jury (the sentencing authority in Georgia) did not rely on a nonstatutory circumstance; the petitioner challenged the trial court's instruction allowing the jury to "consider all the evidence received throughout this trial." At 790. This court denied relief on the basis of the *Henry II* decision, 686 F.2d 311, without citing *Barclay* or *Stephens.* And, in *Shriner,* we squarely rejected a claim similar to Henry's, relying directly on *Barclay.* 715 F.2d at 1458.

In *Barclay,* the Supreme Court stated that the evidence supporting the finding of the nonstatutory aggravating circumstance was "properly introduced to prove that the mitigating circumstance of the absence of a criminal record did not exist." 103 S.Ct. at 3427. The Court in *Barclay* did not rely heavily on the coincidence that the evidence was properly admissible under state law, however. The Supreme Court also considered the sentencing review by the Florida Supreme Court,[2] the existence of valid statutory aggravating circumstances, and the absence of mitigating circumstances. Indeed, Justice Stevens, concurring, stated that "[t]he Florida rule that statutory aggravating factors must be exclusive affords greater protection than the federal Constitution requires." *Id.* 103 S.Ct. at 3432–33.

---

1. The facts and procedural background have adequately been set forth in our previous decisions and we will not repeat them here.

2. Henry does not contend that the review was somehow inadequate in this case.

To accept Henry's argument would create an anomaly: the sentencing authority could constitutionally consider nonstatutory aggravating circumstances only if the evidence supporting those circumstances had validly been admitted on some other ground. This result would contradict the clear language in *Barclay* that "the Constitution does not prohibit consideration at the sentencing phase of information not directly related to either statutory aggravating or mitigating factors, as long as that information is relevant to the character of the defendant or the circumstances of the crime." *Id.* 103 S.Ct. at 3433 (Stevens, J., concurring). Although the Court clearly prohibited any evidence of aggravating acts drawn from or based on constitutionally protected conduct, *see* 103 S.Ct. at 3427, Justice Stevens' comments indicate that Henry overemphasizes the Court's reliance on the admissibility of the evidence at Barclay's trial simply to show the absence of a mitigating circumstance. In this case, the nonstatutory aggravating circumstance relied on by the judge was Henry's resisting arrest and shooting a police officer as the officer knelt on the ground begging not to be shot again. Henry's actions clearly have a material bearing on the character of the defendant, and the actions are not constitutionally protected conduct. This is enough to render the evidence constitutionally "admissible" under *Barclay.*

Henry also argues that this case differs from *Barclay* because the possibility exists that the jury relied "*solely* on a nonstatutory aggravating factor." 103 S.Ct. at 3433 (Stevens, J., concurring) (emphasis in original). Henry's judge instructed the jury that they should consider all aggravating circumstances "not limited to" statutory circumstances. The jury recommended by a vote of 7–5 that Henry be sentenced to death, and the trial judge sentenced Henry to death. It is impossible to determine what evidence the jury relied on in sentencing Henry to death. In *Barclay,* however, Justice Stevens referred to a "death sentence" resting "*solely* on a nonstatutory ... factor," *id.;* he did not directly [3] address whether the jury as well as the judge must specifically find a statutory aggravating factor to be present. In Florida, the judge is the sentencing authority, and the jury acts only in an advisory capacity, returning a general verdict recommending life or death. Both the judge and jury heard substantial evidence of statutory aggravating factors in this case, and the judge specifically found statutory aggravating factors to be present. This procedure provides us adequate assurance that Henry's sentence does not rest solely on a nonstatutory factor.

Next, Henry argues that the trial judge improperly considered only statutory mitigating circumstances;[4] however, the record does not support Henry's contention. Here the trial judge allowed the jury to consider all mitigating circumstances "included but not limited to" statutory circumstances, and the judge specifically found that as to "mitigating circumstances, there are absolutely none." In any event, Henry's attempt to distinguish *Barclay* in this manner, in reliance on our decision in *Goode v. Wainwright,* 704 F.2d 593, 612 (11th Cir. 1983), is now of doubtful merit. The Supreme Court recently reversed *Goode. Wainwright v. Goode,* —— U.S. ——, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983).

We must address one final question in deciding the effect of *Barclay* on this case. In *Barclay,* the Supreme Court relied on the review conducted by the Florida Supreme Court in refusing to invalidate Barclay's sentence. *See* 103 S.Ct. at 3423. In this case, although Henry presented the nonstatutory aggravating circumstances is-

---

**3.** In *Barclay* the jury voted 7–5 for life imprisonment. 103 S.Ct. at 3421. The trial judge's finding of an aggravating factor in *Barclay* provided a sufficient safeguard to allow imposition of the death penalty; we cannot discern a reason for invalidating the death sentence here when the sole distinction is that a jury voted *for* the death penalty.

**4.** Henry raised this issue in his initial cross-appeal as an independent ground of error. *See Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978).

sue to the Florida Court, that Court did not affirmatively pass on it. *Henry II,* 686 F.2d at 311. Nevertheless, this affords no reason for invalidating the sentence. In *Barclay,* the Florida Court also "never discussed the trial judge's specific findings concerning Barclay." *Barclay,* 103 S.Ct. at 3441 (Brennan, J., dissenting); *see generally Barclay v. State,* 343 So.2d 1266 (Fla.1977). In both cases the Florida Court simply conducted its sentencing review and concluded that the trial judge acted properly. We can find no distinction on this ground between this case and *Barclay.* Thus, we reverse the order of the district court granting Henry the writ of habeas corpus because of the trial judge's reliance on nonstatutory aggravating factors.

## II

On cross appeal, Henry first contends that the district judge erred in finding harmless the failure of the trial judge to instruct the jury that aggravating circumstances must be found beyond a reasonable doubt. For the failure to give the instruction to be harmless, the evidence must be so overwhelming that the omission beyond a reasonable doubt did not contribute to the verdict. *See, e.g., Brooks v. Francis,* 716 F.2d 780 at 794 (11th Cir.1983). The district judge accurately noted that the evidence of the aggravating circumstances (murder while committing robbery, especially henious and cruel murder, and pecuniary gain) was overwhelming. The jury never heard an instruction during the trial on any standard of proof other than beyond a reasonable doubt. And, in Florida, the judge, not the jury, imposes the final sentence. We conclude that the judge's failure to repeat his charge to the jury on the standard of proof could not have harmed Henry.[5]

## III

The trial judge charged the jury on both murder with intent to kill and felony mur-

der; the jury returned a general verdict of guilty. Henry therefore contends that, because the jury failed specifically to find that he intentionally killed the victim of the murder, he cannot be constitutionally sentenced to death. *See Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). We recently addressed this type of claim in *Ross v. Hopper,* 716 F.2d 1528 (11th Cir.1983). *Ross* is particularly helpful in resolving Henry's claim.

In *Ross,* the petitioner also claimed that he could not be sentenced to death on the basis of a felony murder conviction, citing *Enmund.* We noted that in *Enmund* the evidence did not demonstrate that Enmund participated in the killing. It appeared that all Enmund had done was to drive the getaway car. *See* 102 S.Ct. at 3378. In *Ross,* the evidence demonstrated that the petitioner fired the fatal shot; we therefore concluded that he could constitutionally be sentenced to death even though he was not charged with intent-to-kill murder. At 1533.

The same is true in this case. Henry bound and gagged his victim, tortured him, and cut him with a razor blade. The victim died by strangling on the gag Henry placed in his mouth. Henry claims that he did not intend that the victim die. He cannot argue, however, that he did not perform the fatal act with intent at least to seriously and wantonly harm the victim. He had no accomplice. Thus, *Enmund* is no bar to the death sentence here.

## IV

Henry next claims that he was denied effective assistance of counsel at his sentencing hearing. First, he notes that his attorney did not object to the trial judge's charge, which failed to instruct the jury that aggravating circumstances must be found beyond a reasonable doubt. We have concluded that the failure of the judge to give this instruction was harmless beyond a

---

**5.** This is not a case in which the judge refused to give the charge; Henry's counsel never re-

quested it.

reasonable doubt. *See supra* § II. In *Washington v. Strickland,* 693 F.2d 1243 (11th Cir.1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983), we set forth a two-part test for ineffective assistance claims. The petitioner must show both ineffective assistance and prejudice. 693 F.2d at 1258. Here, Henry was not prejudiced because the failure to give the instruction was harmless beyond a reasonable doubt. We therefore reject this claim.

■ Henry also claims that his counsel was ineffective because he failed to object to the jury charge allowing consideration of nonstatutory aggravating factors. Although this instruction, under *Barclay,* does not constitute constitutional error, *see supra* § I, it was erroneous under state law. Nevertheless, the failure to object did not deprive Henry of his right to "reasonably effective" counsel under the circumstances. *See Washington,* 693 F.2d at 1250. The Constitution does not mandate error-free counsel. Given that the judge's reliance on the nonstatutory factor is constitutional under *Barclay,* we think it would be anomalous to hold the failure of Henry's counsel to object to the charge to be unconstitutional assistance.

### V

■ Henry next contends that various constitutional deficiencies in his sentencing proceeding rendered that proceeding unreliable, standardless, and arbitrary. *See generally Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). First, Henry argues that reliance by the trial judge on the § (5)(d) aggravating circumstance, murder while committing robbery, resulted in the automatic imposition of the death penalty in his case. This argument has no merit. The sentencing authority clearly has discretion in deciding whether to impose the death penalty. *See Barclay,* 103 S.Ct. at 3431 (Stevens, J., concurring). It is certainly not unconstitutional for the state of Florida, in constructing a

death sentencing procedure, to consider murders committed in the course of other dangerous felonies to be reprehensible. Nor, as Henry argues, does the use of the underlying felony shift the burden of proof to the defendant: the state must nevertheless prove the existence of aggravating circumstances. The Supreme Court has held the Florida statute constitutional. *See Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Henry raises no argument here that convinces us that this case is not controlled by *Proffitt.*

■ Second, Henry argues that the trial judge improperly regarded the aggravating circumstances of murder in the commission of a robbery and murder for pecuniary gain as separate and distinct aggravating circumstances in violation of *Provence v. State,* 337 So.2d 783 (Fla.1976), *cert. denied,* 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). Henry's reading of *Provence* is correct as a matter of state law. We believe, however, that the decision of the Supreme Court in *Barclay,* —— U.S. ——, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), controls our resolution of this issue for the reasons set forth in section I, *supra.* The trial judge found no mitigating circumstances, and we cannot conclude that the state-law error by the trial judge raised the possibility that the death sentence in this case was not "imposed in a consistent rational manner." *Id.* 103 S.Ct. at 3429 (Stevens, J., concurring). The record gives no indication that the sentencing judge considered it important that the same facts supported two statutory provisions. We therefore reject Henry's claim on this ground.

■ Henry's final contention also does not convince us that his sentencing hearing was unreliable and arbitrary. He contends that the trial judge erred by imposing the death sentence immediately after the jury recommended a life sentence. The judge in this case expressly stated on the record that he had carefully considered the case for some time and felt prepared to rule without delay. This is not constitutional error.[6]

---

**6.** In this section of his brief, Henry also raised

the claim that the trial judge improperly con-

## VI

Henry's final claim also rests essentially on the argument that he was arbitrarily sentenced to death. He contends that the Florida Supreme Court's appellate review was improper, that the death penalty has been disproportionally applied in his case, and that the aggravating circumstances relied on by the trial judge are unconstitutionally vague.

### A. *The Florida Supreme Court Review.*

In reviewing cases in which the jury recommends a sentence of life, the Florida Supreme Court employs a standard of review of whether the facts supporting the death sentence are "so clear and convincing that virtually no reasonable person could differ." *Tedder v. State,* 322 So.2d 908, 910 (Fla.1975). The Florida Court apparently does not employ the clear and convincing standard when the jury recommends death. In this case, seven jurors voted in favor of the death penalty and five voted against it; Henry claims that, given the close vote, the distinction drawn by the Florida Court for the purposes of selecting the standard of appellate review is unconstitutional.

The state, citing *LeDuc v. State,* 365 So.2d 149 (Fla.1978), *cert. denied,* 444 U.S. 885, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979), argues that the standards of review do not differ significantly[7] and that in each case the Florida Court simply follows a rule of giving weight to the recommendation of the jury. We need not, however, engage in an examination of the fine points of the standard of appellate review used by the Florida Supreme Court. In *Proffitt v. Florida,* 428 U.S. 242, 249, 96 S.Ct. 2960, 2965, 49 L.Ed.2d 913 (1976), and *Barclay v. Florida,* —— U.S. ——, 103 S.Ct. 3418, 3426–27, 77 L.Ed.2d 1134 (1983), the Supreme Court of the United States expressly noted that the Florida Court applies arguably different standards of review depending on the rec-

ommendation of the jury; however, in both cases the Court implied that the Florida Court's review is constitutional. Although the Supreme Court did not address the specific issue before us, it directly relied on the Florida Court's review both to uphold the constitutionality of the Florida statute, *Proffitt,* and to uphold the constitutionality of the sentencing judge's reliance on a nonstatutory aggravating circumstance, *Barclay.*

 Given the Supreme Court's reliance on the Florida Court's methods of review, we conclude that the Court finds those methods constitutionally valid. It is not unreasonable for the Florida Court to scrutinize cases in which the trial judge ignores the jury's recommendation of a life sentence under a different standard from other cases. Henry does not argue that the Florida Court's review of his sentence was inadequate, and it appears that in every case the Florida Court conducts a meaningful review. It is not the function of this court to legislate state laws and procedures; we only evaluate constitutional attacks upon them. *See Moore v. Balkcom,* 716 F.2d 1511 at 1517 (11th Cir.1983) (giving deference to state court procedures). Under this standard, the Florida Supreme Court's review certainly affords Henry no basis for relief.

### B. *Disproportionate Application.*

 Henry argues that statistics introduced by him at the district court show that the death penalty has been applied in a discriminatory manner because, in Orange County, 16.3% of all capital indictments result in a death sentence and 41.7% of all convictions result in a death sentence, whereas the statewide percentages are 9.7% and 24.3% respectively. This assertion is without merit for two reasons.

---

sidered only statutory mitigating circumstances. We have considered and rejected this claim above. *See supra* § I.

**7.** The Florida Court in *LeDuc* stated:

The primary standard for our review of death sentences is that the recommended sentence of a jury should not be disturbed if all relevant data was considered, unless there appear strong reasons to believe that reasonable persons could not agree with the recommendation.

365 So.2d at 151.

First, in the district court, John Fosnacht, administrative officer in charge of records at the Orange County courts, testified that the statistics relied on by Henry are based on erroneous data. According to Fosnacht, when accurate data is used, the Orange County percentages are 13.2% and 26.9%, respectively. The district court relied on Fosnacht's testimony to conclude that the death penalty is not disproportionately applied in Orange County.[8] The district court's conclusion—with which we agree—alone requires that we reject Henry's claim.[9]

Even if Henry's statistics were accurate, however, there would be no constitutional violation in this case. Henry alleges no racial, sexual or other inherently suspicious discrimination, and he does not argue that the death penalty is somehow unsuited in his particular case. He does not raise a claim that the Florida Court has failed properly to conduct a proportionality review. In essence, he claims only that the Florida death penalty is arbitrary and capricious as applied, and we have rejected that argument. *See Spinkellink v. Wainwright,* 578 F.2d 582, 612–16 (5th Cir.1978).

Recently, in *Maggio v. Williams,* —— U.S. ——, 104 S.Ct. 311, 78 L.Ed.2d 43 (1983), the Supreme Court refused to review a claim that the Louisiana Supreme Court's proportionality review is inadequate because the Louisiana Court makes comparisons only on a district-wide basis.[10] The Supreme Court decided that the issue presented by the Fifth Circuit's ruling against Williams does not warrant a writ of certiorari and vacated Williams' stay of execution. If anything, the issue in *Maggio* is more difficult than in this case: by deciding against Williams (in effect), the Court strongly indicated not only that the death penalty may be applied differently from county to county, but that the state supreme court need not review those differing applications to determine whether they are disproportionate. We therefore reject Henry's claim.

### C. Vague Application of Aggravating Circumstances.

Henry argues that the following Florida aggravating circumstances—"especially heinous, atrocious, or cruel," Fla.Stat. Ann. § 921.141(5)(h), "created a great risk of death to many persons," § 921.141(5)(c), and "for the purpose of avoiding . . . a lawful arrest," § 921.141(5)(e)—have been applied arbitrarily and capriciously in Florida. The application of the second and third circumstances is not material: the trial judge did not rely on the § (5)(c) and § (5)(e) factors in this case. We also find no merit in Henry's claim based on the § (5)(h) factor. We have read the cases that, according to Henry, show uneven application of that factor, and we do not find that they support Henry's contention. For example, in *Halliwell v. State,* 323 So.2d 557 (Fla.1975), a case in which the Florida Court invalidated a trial judge's finding of the § (5)(h) factor, the heinous and atrocious acts occurred after death; *Halliwell* therefore was a proper case in which to disallow reliance on the § (5)(h) factor. After reviewing the Florida cases, we find nothing improper in the action of the Florida Court.

Henry also cannot successfully argue that the application of the § (5)(h) circumstance in this case is unconstitutional. The vile and atrocious acts committed by Henry upon his victim and before his victim's death clearly afford a sufficient basis to support a finding based on § (5)(h) in this case. *See Burger v. Zant,* 718 F.2d 979 at 982–87, (11th Cir.1983) (upholding application of similar § (b)(7) circumstance as applied in Georgia).

The judgment of the district court is AFFIRMED in part and REVERSED in part.

---

**8.** Henry does not argue that the district court's findings concerning the accuracy of his statistics are erroneous.

**9.** In any event, Henry's statistics appear to be inadequate. For example, they do not account for differences in the types of murders committed by reference to the presence or absence of aggravating and mitigating circumstances.

**10.** The Court addressed the issue in deciding to vacate a stay issued by the Fifth Circuit Court of Appeals.