769 F.2d 1488
 Carl Ray SONGER, Petitioner-Appellant,
v.
Louie L. WAINWRIGHT, Secretary, Florida Department of
Corrections, Richard Dugger, Superintendent,
Florida State Prison, Starke, Florida,
Respondents- Appellees.
 No. 85-3064.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 16, 1985.
 
 Deval L. Patrick, New York City, Dorean M. Koenig, Lansing, Mich., for petitioner-appellant.
 Peggy A. Quince, Asst. Atty. Gen., Tampa, Fla., for respondents-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, ANDERSON and CLARK, Circuit Judges.*
 PER CURIAM:
 
 
 1
 After an extensive history of direct and collateral review on a variety of issues, this case comes before us after the denial by the district court of petitioner's second federal habeas petition as successive. See Rules Governing Section 2254 Cases in the United States District Courts, Rule 9(b). This case was voted en banc on a motion of the panel that heard and granted petitioner's motion for stay of execution. Finding that this petition does allege and that this record does establish new and different grounds for relief and that petitioner could not have presented such in the prior proceeding, we VACATE the judgment of the district court and REMAND with instructions to grant the writ in accordance with this opinion.
 
 
 2
 During proceedings held in late January, 1985, the state trial judge made statements, for the first time, indicating that he interpreted Florida Statute Sec. 921.141(6) at the time of petitioner's trial as limiting consideration of mitigating evidence to those "enumerated items." This was followed by statements reflecting that in sentencing petitioner he thus did not give consideration to any evidence dealing with nonstatutory mitigation. This violates the dictates of Eddings v. Oklahoma, 455 U.S. 104, 113-14, 102 S.Ct. 869, 876, 71 L.Ed.2d 1 (1982) and Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). At the same hearing on petitioner's second state 3.850 motion, that court also indicated that Lockett had never been held explicitly retroactive in its application. There is no doubt today about this question. Lockett is retroactive, see e.g., Eddings v. Oklahoma, 455 U.S. 104, 118, 102 S.Ct. 869, 878, 71 L.Ed.2d 1 (1982); Jordan v. Arizona, 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978); Spivey v. Zant, 661 F.2d 464 (5th Cir. Unit B 1981).
 
 
 3
 The fact that the Florida Supreme Court has now held that neither the wording of the Florida Statute nor its prior decisions precluded the introduction of nonstatutory mitigating evidence, Songer v. State, 463 So.2d 229 (Fla.1985), relying on Songer v. State, 365 So.2d 696 (Fla.1978), is not controlling in the instant matter. That court has recognized that the law could have been so "misconstrued." See Perry v. State, 395 So.2d 170, 174 (Fla.1981); Jacobs v. State, 396 So.2d 713, 718 (Fla.1981). The critical and dispositive fact here is that the state trial judge did misinterpret the law and thus failed to consider any nonstatutory mitigation at the time of imposing the sentence of death. Although that sentence was vacated, Songer v. Florida, 430 U.S. 952, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977), due to a Gardner violation, upon resentencing the state trial judge limited petitioner to reviewing and rebutting the presentence investigation report. Consequently, it is clear that the state sentencing judge refused to give any consideration to nonstatutory mitigating evidence at either the first or second sentencing proceedings. The interests of justice require that this be corrected.
 
 
 4
 The district court's denial of the writ of habeas corpus relief is reversed as to the death penalty. The petitioner is entitled to a new sentencing hearing by the sentencing judge at which he should be allowed to introduce any and all evidence in mitigation of the reimposition of a sentence of death. As discussed above, the state sentencing judge should then consider all relevant evidence in the total record and sentence petitioner in accordance with Florida law.[1]
 
 
 5
 The case is REMANDED to the district court for the entry of an appropriate writ. The clerk is instructed to issue the mandate immediately and simultaneously with the mandate in case number 83-3500.
 
 
 6
 CLARK, Circuit Judge, concurring in part and dissenting in part, in which KRAVITCH, JOHNSON and ANDERSON, Circuit Judges join:
 
 
 7
 I concur in the majority's decision that the state trial judge's decision to limit consideration of mitigating evidence to the specifically enumerated mitigating circumstances violated the dictates of Eddings v. Oklahoma, 455 U.S. 104, 113-14, 102 S.Ct. 869, 876, 71 L.Ed.2d 1 (1982) and Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). However, I cannot agree with the majority's conclusion that "there was no constitutional infirmity in the jury proceedings in the original sentencing process...." Majority Opinion, at 1489, n. 1. This conclusion ignores the reality of the state of mind of the prosecutor, the defense counsel, the trial judge and the jury with respect to the meaning of the Florida death penalty statute at the time of Songer's capital sentencing proceeding in 1974. The effect of their combined perception resulted not only, as the majority acknowledges, in the trial judge's failure to consider non-statutory mitigating evidence, but also in counsel's failure to develop or present non-statutory mitigating evidence and instructions that prevented the jury from considering such evidence.
 
 
 8
 Because state law operated to restrict the consideration of mitigating evidence by both the sentencing judge and the advisory jury in this case, the death sentence should not be reimposed unless the jury is allowed to perform its critical role in the sentencing process[1] consistent with the dictates of the Eighth Amendment. Accordingly, I respectfully dissent from the majority opinion.
 
 
 9
 I. The Jury Proceeding at the Penalty Phase of Songer's Trial
 
 
 10
 A. Mitigating Evidence not Presented to the Jury
 
 
 11
 At the sentencing hearing, one of the first under the then new Florida statute, Songer was the sole witness in his own behalf. He answered several questions about his drug use and the non-violent nature of his previous crimes, but defense counsel presented no evidence other than this testimony. There was available, at the time, expert testimony that could have explained the influence of Songer's drug addiction, along with lay testimony confirming the effects of drug use upon the petitioner. The questions regarding prior crimes never touched on Songer's prospects for rehabilitation, a fact that could have been placed into evidence through an existing Texas parole report which described Songer as non-violent and a good candidate for rehabilitation.
 
 
 12
 Furthermore, none of the evidence at sentencing related to Songer's character despite the fact that many family members were present at trial to testify for him. Songer's wife could have testified about his usually passive temperament and the fact that he had a two-year-old son. His parents were present and could have described his childhood and general character. Several uncles and cousins were available for testimony about such matters as Songer's training in brickmasonry and carpentry. One of the uncles worked as a highway patrolman, the same occupation as the victim.
 
 B. The Reasons for the Omission
 
 13
 These omissions were not the product of a tactical choice by Songer's counsel, as held by the federal district court on the first petition.[2] Rather, the omissions were a result of the perception of Florida law shared by Songer's counsel and the trial judge. The statements made by the trial judge, contained in the opinion referred to by the majority, do not even suggest that he concluded that consideration of statutory mitigating circumstances was limited to the court's sentencing function. Rather he indicated that prior to trial he studied the statute and determined that non-statutory mitigating evidence was not to be considered by the jury.[3] He stated that he thought the "Penalty Proceeding Jury Instructions should 'track the statute'...." Mem. op. at 5 (Fla.Cir.Ct. Jan. 27, 1985). He then went on to say, "[t]he evidence and testimony proffered at the Post-Conviction hearing indicated there was evidence at the time of the Songer trial that could be presented as mitigating circumstances under present case and statutory law...." Mem. op. at 6.
 
 
 14
 The only reasonable conclusion that can be drawn from this is that not only did the trial judge restrict his consideration in sentencing to only statutory mitigating circumstances but that had Songer's counsel proffered non-statutory mitigating evidence for jury consideration, he would not have admitted it. His opinion states as much. Furthermore, the instruction given to the jury by his own admission was intended to limit their consideration to only the mitigating circumstances enumerated in the statute. The instruction given at the penalty phase of Songer's trial stated "[m]itigating circumstances by statute are," then listed the items contained in Fla.Stat.Ann. Sec. 921.141 (1975).
 
 
 15
 The verdict forms given to the jury to sign when it reached its conclusion as to the appropriate penalty are also illuminating. The two forms, one if the jury recommended life, the other if the jury recommended the death penalty read:
 
 
 16
 We, the Jury, having heard the evidence under the sentencing procedure in the above case, as to whether aggravating circumstances which were so defined in the Court's charge, existed in the capital offense here involved, and whether sufficient mitigating circumstances as defined in the Court's charges to outweigh such aggravating circumstances, do find and advise that the mitigating circumstances do outweigh the aggravating circumstances. We therefore advise the Court that a life sentence should be imposed herein upon the defendant by the Court, dated this blank day of blank, 1974, and a place for the foreman to sign. (emphasis added).
 
 
 17
 We, the Jury, having heard evidence under the sentencing procedure in the above case, as to whether aggravating circumstances which are so defined in the Court's charge, existed in the capital offense here involved and whether sufficient mitigating circumstances as defined in the Court's charge to outweigh such aggravating circumstances, do find and advise that the aggravating circumstances do outweigh the mitigating circumstances. We therefore advise the Court that a death sentence should be imposed herein upon the defendant by the Court, dated this blank day of blank, 1974, and a place for the foreman to sign. (emphasis added).
 
 
 18
 In addition to the trial judge's statements regarding what he believed the law to be regarding mitigating evidence at the time, as well as the instructions he gave and the verdict forms he utilized, we have Songer's counsel's testimony. He testified at a state post-conviction evidentiary hearing that he had not offered character or other mitigating evidence because he believed at the time that only evidence relevant to the statutory mitigating circumstances was admissible. He stated:
 
 
 19
 The only recollection that I have is that the statute was new at that time, ... going over the statutory grounds with him for aggravating circumstances and mitigating circumstances, and what would be available to us under the statutory language and what would be against us under the statutory language.... [I examined] all the factors we had available to us. R.II, at 379. (footnote omitted).[4]
 
 
 20
 The district court in Songer's first federal habeas petition, in determining that trial counsel Coniglio was not ineffective, concluded, "it is quite possible that [Coniglio] may have been laboring under the reasonable, but mistaken, belief that he could not introduce any nonstatutory factors." Songer v. Wainwright, 571 F.Supp. 1384 (M.D.Fla.1983).[5]
 
 
 21
 Of course, neither the state trial judge's nor Songer's counsel's construction of the Florida statute was unfounded. Quite the contrary, theirs was the most reasonable interpretation of Florida law at the time. The new Florida death penalty statute was passed and became effective in December of 1972, shortly after the Supreme Court's decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The wording of the statute itself is logically interpreted consistently with their view; at least, the statute is very ambiguous.[6] The Florida Supreme Court's subsequent rulings verified their conclusions. The Florida Supreme Court first construed the statute in State v. Dixon, 283 So.2d 1 (Fla.1973).[7] That court in describing the statute stated:
 
 
 22
 The Legislature has, ... provided a system whereby the possible aggravating and mitigating circumstances are defined, but where the weighing process is left to the carefully scrutinized judgment of jurors and judges.
 
 
 23
 283 So.2d at 7.
 
 Later in the opinion the court reasoned:
 
 24
 The most important safeguard presented in Fla.Stat. Sec. 921.141, F.S.A., is the propounding of aggravating and mitigating circumstances which must be determinative of the sentence imposed.
 
 
 25
 283 So.2d at 8.
 
 
 26
 Finally, before discussing each mitigating circumstance enumerated in the statute, the court said:
 
 
 27
 When one or more of the aggravating circumstances is found, death is presumed to be the proper sentence unless it or they are overridden by one or more of the mitigating circumstances provided in Fla.Stat. Sec. 921.141(7), F.S.A. All evidence of mitigating circumstances may be considered by the judge or jury.
 
 
 28
 283 So.2d at 9.
 
 
 29
 The reasonableness of the trial judge's and Songer's counsel's view of the statute was further born out in Cooper v. State, 336 So.2d 1133 (Fla.1976). The Florida Supreme Court in Cooper stated:The sole issue in a sentencing hearing under Section 921.141 ... is to examine in each case the itemized aggravating and mitigating circumstances. Evidence concerning other matters have [sic] no place in that proceeding.... The Legislature chose to list the mitigating circumstances which it judged to be reliable ..., and we are not free to expand the list.
 
 336 So.2d at 1139.[8]
 
 30
 Thus, the majority's conclusion that there was no error in the jury sentencing phase of Songer's trial is not supported by the record in this case. However, the error was not due to the fault of either the trial judge or Songer's counsel. Florida law, as reasonably and logically construed by both, operated to preclude non-statutory mitigating evidence.
 
 
 31
 C. The Independent Significance of the Jury Instructions
 
 
 32
 Even if counsel had not felt constricted in his presentation of evidence, the effect of the trial judge's instructions rendered the sentencing proceeding unconstitutional and are an independent reason why the jury's recommendation was reached in a manner contrary to Lockett, supra.[9]
 
 
 33
 As was stated previously, the instructions improperly limited the jury's consideration of mitigating evidence. In Washington v. Watkins, 655 F.2d 1346 (5th Cir.1981), cert. denied, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982), the court held that jury instructions improperly restricted the consideration of mitigating evidence because the trial court had instructed the jury to "consider the following elements of mitigation," had read the list of the statutory mitigating factors, and then had given this description of the jury's task, "[If you find] one or more of the preceding [statutory] elements of mitigation exist[s], then you must consider whether it outweighs the aggravating circumstances." This paraphrase of the statute followed by an erroneous description of the jury's task "operated affirmatively to preclude jury consideration of nonstatutory mitigating factors." Id. at 1377. Similarly in this case, a paraphrased version of the statute was followed by a faulty description of the jury's task contained in the verdict forms that called on the jury to consider whether "sufficient mitigating circumstances [as] defined in the Court's charge" existed to outweigh the aggravating circumstances. This instruction, just as the one in Washington, refers to the previously listed mitigating factors in describing the sort of evidence that could lead to a recommendation of life imprisonment, and thus, affirmatively misled the jury regarding the status of non-statutory mitigating evidence.
 
 
 34
 This court held in Ford v. Strickland, supra, that an instruction which stated with regard to mitigating circumstances that the jury "shall consider" the statutory list of mitigating factors did not restrict the jury's consideration of mitigating evidence. But the holding in Ford was a narrow one, inapplicable in this case for several reasons. First, the instruction in Ford dealt with only one section of the statute, the "shall" language of subsection (6), rather than the more misleading "as enumerated" language of subsection (2). The observation of the Supreme Court in Proffitt v. Florida, 428 U.S. 242, 250 n. 8, 96 S.Ct. 2960, 2965 n. 8, 49 L.Ed.2d 913 (1976), relied upon by the Ford court, was also based upon a reading of subsection (6) without any mention of subsection (2). In this case, by contrast, both sections of the statute were mentioned. Second, the Ford court distinguished Washington v. Watkins, 655 F.2d 1346 (5th Cir.1981), cert. denied, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982), by noting the restrictive language that appeared in that case after the list of statutory mitigating factors. Such language was missing from the Ford instruction but was present in Washington and in this case. See Alvord v. Wainwright, 725 F.2d 1282, 1299 (11th Cir.) modified, 731 F.2d 1486,cert. denied, --- U.S. ----, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984). Third, the defendant in Ford had not been precluded from introducing any mitigating evidence and the trial judge believed that the statute contained no such restrictions. In this case, as the previous discussion indicates, counsel for Songer and the judge himself held a restrictive view of the statute and that view was imparted to the jury in the charge.
 
 
 35
 In sum, this case is controlled by Washington v. Watkins rather than Ford v. Strickland. The instructions improperly restricted the jury's consideration of mitigating circumstances in violation of Lockett, supra.
 
 II. Conclusion
 
 36
 What the previous discussion has made clear is that the errors did not, as the majority concludes, only affect the trial judge's weighing of the evidence. The only conclusion consistent with this record is that the entire sentencing proceeding was unconstitutionally limited. Able trial counsel did not investigate or present non-statutory mitigating evidence. The trial judge did not believe it was admissible anyway. He instructed the jury to weigh the statutory aggravating circumstances against the statutory mitigating circumstances and also limited his own consideration in that fashion. Both the jury and judge decided that death was the appropriate penalty. As the constitutional infirmity in Songer's sentencing proceeding was manifest throughout the proceeding, he is entitled to a new penalty phase proceeding before a jury, not only before the judge.[10] Therefore, I respectfully dissent.
 
 
 37
 The state trial judge, who was also the judge who presided over the petitioner's post conviction hearings, was admirably candid in stating his view of how the statute operated in 1974. He acknowledged that mitigating evidence now admissible under current death penalty jurisprudence was available at the time of trial. Hopefully, in the interest of justice he will require what the majority leaves as an option and will impanel a new advisory jury to hear all available mitigating evidence. Despite the long history of this case in the courts, both state and federal, if such a hearing is held before a new jury, the fate of Carl Ray Songer should be finally determined.
 
 
 
 *
 Judge Joseph W. Hatchett recused himself and did not participate in this decision
 
 
 [1]
 Petitioner is entitled to be resentenced. Florida's procedure in capital cases provides in the first instance an advisory recommendation by the trial jury. Although we have held that there was no constitutional infirmity in the jury proceedings in the original sentencing process, we leave to the state trial judge's discretion the issue of whether or not another jury should be impaneled to assist him in arriving at an appropriate sentence
 
 
 [1]
 The jury plays an indispensable role in the sentencing process established by Florida. After testing the sufficiency of the statutory aggravating circumstances and weighing all statutory aggravating evidence against the relevant mitigating evidence, the jury returns a recommendation of either life imprisonment or the death penalty. Fla.Stat. Sec. 921.141(2) (1985). A recommendation of life may only be overturned if "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla.1975). Although Florida is not constitutionally obligated to make a jury the sentencing authority in capital cases, Spaziano v. Florida, --- U.S. ----, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), the Supreme Court's recent decision in Baldwin v. Alabama, --- U.S. ----, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985) (holding that under the Alabama death penalty statute, because the judge did not consider the jury's recommendation, the statute which forced the jury to sentence the defendant to death whenever aggravating circumstances existed was not unconstitutional), indicates that a state's greater power to exclude a jury from capital sentencing altogether does not include the lesser power to assign to the jury any role imaginable. The Court stated that the Constitution might prohibit a sentencing judge from considering a jury verdict reached in contravention of the Constitution if "the judge actually were required to consider the jury's 'sentence' as a recommendation as to the sentence the jury believed would be appropriate, ... and if the judge were obligated to accord some deference to it." --- U.S. at ----, 105 S.Ct. at 2733 (citation omitted)
 The fair and consistent administration of the Florida sentencing scheme required by the Eighth Amendment prevents Florida from depriving the defendant of a properly individualized determination of the sentence by the jury if that jury has been asked to recommend a sentence that it considers appropriate and the sentence ultimately imposed depends to any significant degree on the jury's recommendation. Therefore, any restriction of mitigating evidence presented to or considered by the jury, a "sentencer" under Florida law within the meaning of Eddings v. Oklahoma, supra, would be a violation of Lockett v. Ohio, supra.
 
 
 [2]
 The district court never reached the merits of the second habeas petition now before us because it ruled that each of the claims raised in the petition had already been ruled upon and that the ends of justice would not be met by reconsideration of the claims. It therefore dismissed the petition under Rule 9(b) of the rules governing section 2254 cases. This rule codifies the standard announced in Sanders v. United States, 373 U.S. 1, 16-17, 83 S.Ct. 1068, 1077-78, 10 L.Ed.2d 148 (1963). There are two branches to this doctrine: the first one applies to successive petitions that allege no new grounds for relief, while the second applies to successive petitions that allege new grounds that might have been alleged in a prior petition. Under the first branch, the district court has discretion to dismiss the petition if (1) the prior petition was adjudicated on the merits and (2) the ends of justice would not be served by considering the merits again in the subsequent petition
 The issue of the effect of state law on defense counsel's presentation at sentencing was raised in section 14 C of Songer's first petition. Yet the district court presumed (without finding) that the failure to present the mitigating evidence was the product of a tactical choice and, while noting the attorney's reasonable but mistakenly restrictive interpretation of the statute, the court did not consider whether that circumstance alone could form a basis for relief. 571 F.Supp. 1384, 1394-95. This issue, therefore, was never adjudicated on the merits.
 The issue of restrictive jury instructions was raised in the first petition and addressed on the merits, meaning that the claim may be heard now only if reconsideration serves the ends of justice. The plainly erroneous disposition of this claim in the prior petition provides a persuasive reason to allow reconsideration at this time. See Bass v. Wainwright, 675 F.2d 1204, 1207 (11th Cir.1982). The panel opinion rejected the claim on the basis of Ford v. Strickland, 696 F.2d 804, 812 (11th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983). Yet the Ford decision involved jury instructions based exclusively on the statute, while the instructions in Songer's case restricted the jury further through the verdict form. See section III, infra. The panel opinion also incorrectly states that Songer does not allege cause and prejudice for his failure to object to the jury instructions. Songer claims that state law at the time restricted the use of mitigating evidence (thus alleging cause) and that the jury probably would have changed its verdict if it had heard the substantial mitigating evidence he would have presented (thus alleging prejudice). Moreover, the state did not invoke a procedural bar on this claim.
 The ends of justice would also be served by hearing this claim because it is inextricably intertwined with the claim discussed above that has not yet received a ruling on the merits, and is critical to a full understanding of that claim.
 
 
 [3]
 The judge stated:
 Therefore, the undersigned determined that the Penalty Proceeding Jury Instructions should "track the statute" (Chapter 72-724, Laws of Florida) and limited the aggravating circumstances to those enumerated by that statute; and placed the normally mandatory connotation on the word "shall" in all places where such word was used in such statute, subject to the following provision of that statute, to-wit:
 (1) "... In the proceeding, evidence may be presented as to any matter that the court deems relevent [sic] to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (6) and (7) of this section. Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements; ... The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death". (Above underlining by the Court)
 
 
 [4]
 He also subsequently gave an affidavit in which he stated in pertinent part:
 
 
 [8]
 That at the time of the defendant's sentencing hearing, Florida Statute 921.141 was relatively new. Your affiant in construing said statute reasonably believed that it precluded the consideration of any evidence except the statutorily enumerated mitigating circumstances
 
 
 [9]
 Further, it was your affiant's belief that any evidence outside the scope of the statutorily enumerated circumstances was irrelevant, immaterial and patently inadmissible
 
 
 [10]
 Your affiant verily believes that this was the construction ascribed to the statute by the prosecution as well as the Honorable John Booth, Circuit Judge presiding at the trial
 
 
 [11]
 That as a result of the statute, and the construction which your affiant applied, your affiant offered only brief testimony by the defendant regarding his history of criminal activity (T-429), his history of violent crimes (T-429), and his mental and/or emotional condition (T-429). The direct testimony of the defendant took less than two (2) minutes and comprises approximately two (2) pages of the trial transcript (T-429, T-430, T-431). The total mitigating testimony, including direct and cross examination, took approximately five (5) minutes. The brevity of the defendant's presentation was a direct consequence of the fact that at the time of trial, the undersigned reasonably believed that mitigation was limited to that provided by statute
 
 
 [12]
 The undersigned had access to a variety of other mitigating evidence which was not offered, nor investigated, because of the undersigned's reasonable belief regarding the limitation. Had your affiant known or had reason to know that other evidence could have been offered, your affiant would have offered same, including but not limited to:
 (a) psychological testimony regarding the effects of drug abuse on the defendant's state of mind.
 (b) testimony from the defendant's family regarding his upbringing and his association with his family.
 (c) testimony from friends and associates regarding the defendant's pertinent character traits.
 (d) testimony and/or evidence regarding the defendant's likelihood for rehabilitation.
 (e) testimony from former teachers and clergy regarding pertinent character traits.
 (f) a Texas parole report of 1969, including testimony from correctional personnel as to the defendant's adjustment, attitude, and likelihood for rehabilitation while incarcerated.
 
 
 [13]
 Your affiant would have investigated and offered any and all conceivable mitigating evidence had your affiant known such was admissible
 
 
 [14]
 Throughout the pendency of these proceedings, your affiant had little or no contact with the defendant's parents, inasmuch as the parents had no actual knowledge of the charged offenses and inasmuch as the construction ascribed to the statute indicated they had absolutely no relevant, material or admissible information
 
 
 [15]
 Further, your affiant had no knowledge of the existence of a handwritten letter from the defendant's father, postmarked the 4th day of February, 1974, addressed to Michael Kovack, Assistant Public Defender, and as a result of the above, made no attempt to utilize the defendant's parents' assistance in preparing the defendant's cause for either the guilt or penalty phase of the proceedings
 
 
 [16]
 It is your affiant's recollection that Florida's death penalty statute was relatively new and there were few, if any, authorities upon which to rely in the preparation of the penalty phase of the proceedings
 
 
 [17]
 It is your affiant's belief, based upon recollection of the proceedings and the instructions given to the jury, that the jury likewise believed that they were limited in their consideration to the mitigating circumstances as defined in the Court's charges
 
 
 [18]
 At the defendant's re-sentencing held on the 17th day of August, 1977, the undersigned on behalf of the defendant asserted his right to another sentencing proceeding at which time the undersigned would have offered additional mitigating evidence, but was precluded from doing so, as the Court ruled that the hearing was limited to the Gardner v. State violation
 
 
 [5]
 Apparently, the district court believed this "reasonable belief was mistaken" because Florida law did not, in fact, prevent the introduction of non-statutory mitigating evidence at the penalty phase of a capital trial. However, in light of the trial judge's statements as well as the discussion infra., it seems apparent that Coniglio's opinion of the law was not only reasonable but accurate
 
 
 [6]
 The statute required the advisory jury, in arriving at its advisory sentence, to consider:
 (a) Whether sufficient aggravating circumstances exist as enumerated in subsection (6);
 (b) Whether sufficient mitigating circumstances exist as enumerated in subsection (7) which outweigh the aggravating circumstances found to exist, and
 (c) Based on these considerations, whether the defendant should be sentenced to life [imprisonment] or death.
 Fla.Stat. Sec. 921.141(2) (1975) (emphasis supplied). The task of the sentencing judge is described in parallel terms, referring to mitigating circumstances "as enumerated."
 These two subsections indicate that the jury and judge should only consider mitigating circumstances listed in the statute. The enumeration of mitigating and aggravating circumstances in subsections (6) and (7), however, leaves the meaning of the statute ambiguous. Subsection (6) (now renumbered as subsection (5)) provides that "aggravating circumstances shall be limited to the following [categories]." (emphasis supplied). Subsection (7) (currently numbered as subsection (6)) provides that "mitigating circumstances shall be the following: [list of categories]." The difference between "shall be" and "shall be limited to" could be read to mean that the statutory list of aggravating circumstances was exclusive while the list of mitigating circumstances was not. It could mean that mitigating circumstances "shall be" the enumerated ones along with others. Yet this reading would appear to conflict with the "as enumerated" language elsewhere in the statute.
 
 
 [7]
 Songer's trial was in 1974. Dixon was decided in 1973 but was not in published form at the time of Songer's trial and did not influence the trial court or any of the attorneys
 
 
 [8]
 The Florida Supreme Court, after Lockett had been decided, ruled that neither the statute nor its previous decisions precluded the introduction of nonstatutory mitigating circumstances. State v. Songer, 365 So.2d 696 (Fla.1978). Although, in somewhat of an understatement, the court has recognized that the statute and its own decisions could have been misconstrued by courts to limit the consideration of mitigating factors. See Perry v. State, 395 So.2d 170, 174 (Fla.1981); Jacobs v. State, 396 So.2d 713, 718 (Fla.1981). This limitation has also been recognized by the federal courts. See, e.g., Spaziano v. Florida, --- U.S. ----, ---- n. 4, 104 S.Ct. 3154, 3158 n. 4, 82 L.Ed.2d 340, 347 n. 4 (1984); Barclay v. Florida, 463 U.S. 939, 961-64, 103 S.Ct. 3418, 3430-31, 77 L.Ed.2d 1134, 1151-52 (1983); Foster v. Strickland, 707 F.2d 1339, 1346 (11th Cir.1983); Ford v. Strickland, 696 F.2d 804, 812 (11th Cir.1983) (en banc), cert. denied, --- U.S. ----, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983)
 
 
 [9]
 Songer's brief testimony at the penalty phase, mentioned previously, included mention of several facts that arguably did not relate to any of the statutory mitigating circumstances. The fact that Songer's attorney elicited this information from the defendant does not conflict with the conclusion that state law restricted his presentation of mitigating evidence. The arguably non-statutory circumstances were mentioned briefly and in connection with testimony regarding statutory factors
 The fact that Songer did not object to these instructions or raise the issue on direct appeal does not preclude consideration of the claim because the Florida Supreme Court has addressed the merits of the claim. See County Court of Ulster County v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
 
 
 [10]
 See Menendez v. State, 419 So.2d 312, 314 (Fla.1982) (where there is error regarding the instructions and evidence at the sentencing proceeding, a defendant is entitled to a new jury both to hear evidence and to make a recommendation as to sentence)